
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-15-993

| | | |
|---|---|---|
| ROBIN M. EMIS | | **Opinion Delivered** June 7, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION [NO. 60DR-10-1616] |
| V. | | |
| | | HONORABLE MORGAN E. WELCH, JUDGE |
| KEITH W. EMIS | | |
| | APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

This appeal arises from a child-custody modification. Robin Emis appeals the Pulaski County Circuit Court order modifying the custody arrangement of the parties' minor children placing primary custody in Keith Emis and providing Robin with visitation. She also appeals the trial court's award of attorney's fees and its denial of other posttrial motions. We affirm.

The procedural history is as follows. Robin and Keith divorced in September 2011 when their twin boys were twenty-two months of age. Robin was awarded custody, and Keith was awarded visitation. Subsequently, Robin and Keith reached an agreement modifying the custody, support, and visitation provisions of the decree. They agreed that each would have "joint physical custody of the minor(s), with legal custody vested in Plaintiff Robin Emis." On September 5, 2014, the trial court entered an order modifying support, custody, and visitation pursuant to their agreement, nunc pro tunc to May 1, 2012.

SLIP OPINION

Eventually both Robin and Keith sought an award of primary custody, and Robin requested the court's permission to relocate with the children to Florida. Their respective claims were tried by the court during a three-day hearing. On August 27, 2015, the trial court entered a formal order denying Robin's motions and granting Keith's request for a change in custody. Robin filed a timely notice of appeal from this order. *See Emis v. Emis*, 2017 Ark. 52, 508 S.W.3d 886.

Posttrial, Robin filed a motion for recusal, which was denied by the court. Keith filed a motion to strike an affidavit and a motion for attorney's fees, which were both granted by the court. The court also granted a motion for attorney's fees filed by the attorney ad litem. Robin timely filed notices of appeal from those orders as well.

On appeal, Robin argues that the trial court erred in denying her motion to relocate by finding that she had engaged in a constructive fraud with respect to the entry of the September 2014 child-custody agreement and by construing that agreement to be one of "true joint custody." She also challenges the trial court's finding that a material change of circumstances existed to support modification. Finally, she challenges the trial court's award of attorney's fees to the attorney ad litem and opposing counsel; its denial of her motion for recusal without benefit of a hearing; its decision to strike an affidavit without a hearing and while the motion to recuse was still pending; and its order denying her request to vacate the appointment of the attorney ad litem without a hearing. We consider each of these issues in turn.

Cite as 2017 Ark. App. 372

### I. *Child Custody and Relocation*

We first consider the issue of whether the trial court erred in awarding primary custody of the children to Keith and in denying Robin's request to relocate. In reviewing this equity matter, we conduct a de novo review of the record and do not reverse a finding by the trial court unless it is clearly erroneous or clearly against the preponderance of the evidence. *Foley v. Foley*, 2014 Ark. App. 351. We also give due deference to the trial court in judging the credibility of the witnesses, and this deference is even greater in cases involving child custody, since a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.* With these standards in mind, we turn our consideration to the issues of custody and relocation before the trial court.

### A. Custody Determination

We begin our consideration with the trial court's decision to award primary custody of the twins to Keith. In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody. *Nichols v. Teer*, 2014 Ark. App. 132, 432 S.W.3d 151. Thus, we must conduct a de novo review of the nature of the custody relationship created by the September 2014 agreed order so that we may properly evaluate the trial court's finding of a material change of circumstances in this case.

The trial court found that the September 2014 agreed order established joint custody of the children between Robin and Keith. In reaching this conclusion, the court found that the "joint custody arrangement" agreed to by the parties was ambiguous. As a result, the court

considered the circumstances surrounding the entry of the order in its determination. Robin challenges the trial court's characterization of the child-custody arrangement. She contends that the order was not ambiguous as it related to the legal custody of the children; therefore, the trial court erred in its determination. We disagree.

We find no error in the trial court's conclusion that the September 2014 agreed order was ambiguous. Both Robin and Keith agreed to the terms and to the entry of the September 2014 order. In fact, the September 2014 agreed order was drafted by Robin.[1] That order states that "the parties have joint physical custody of the minor(s), with legal custody vested in [Robin]." The September 2014 agreement, however, refers to "visitation" rather than alternating physical custody and provides for a large award of child support despite "shared physical custody." In other words, it is unclear from the agreement itself exactly what the nature of the September 2014 modification to the divorce decree was intended to be.[2]

The first rule of interpretation of a contract is to give the language employed the meaning that the parties intended. *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id*. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the

[1]Robin is an attorney licensed to practice in the State of Arkansas.

[2]Compare the imprecise language in the September 2014 order with the clear language of the initial divorce decree, which expressly stated that Robin "shall have full legal and physical custody of the minor(s), subject to set visitation of [Keith]." The divorce decree referred to Keith as the "non-custodial parent."

parties themselves viewed it. *Id*. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id*. Using these standards of law, we agree with the trial court that the September 2014 order is ambiguous.

Because the nature of custody provided for in the September 2014 agreed order is ambiguous, the trial court's consideration of extrinsic evidence of the intent of the parties was not clearly erroneous. Our supreme court has explained that when an ambiguity exists in a contract, we are permitted to look outside the contract to determine the actual intent and conduct of the parties. *Rockefeller v. Rockefeller*, 335 Ark. 145, 980 S.W.2d 255 (1998). In arriving at the intention of the parties, the courts may consider and accord considerable weight to the construction of an ambiguous contract or deed by the parties themselves, evidenced by subsequent statements, acts, and conduct. *Id*. We will now consider the extrinsic evidence of record, beginning with the pleadings from the parties.

In her original motion to modify the decree and to relocate, Robin asserted that the parties had entered into a "joint custody arrangement" on September 5, 2014. She averred that, prior to the execution of the "joint custody agreement," the parties had "co-parented peacefully and visitation was relatively conflict-free." She then claimed that, since the entry of the order, the parties had been engaged in "consistent hostility/conflict/upheaval." In fact, she described the arrangement as a "hybrid joint custody arrangement, with shared parenting responsibilities." As a result, she claimed that, given the latent hostilities that had erupted between the parties, coparenting on a "joint-custody" basis was no longer possible. She then

requested that the court "modify the joint custody arrangement" to revert "primary custody" back to her.

After Keith had filed his motion to change custody, Robin's perspective of the agreement changed. In her response to Keith's motion, she denied that the parties had a true "joint custody arrangement"; instead claiming that she retained "full **_legal_** custody" of the children and that they shared a "hybrid joint visitation arrangement." (Emphasis in original.)

We next consider the extrinsic evidence found in the testimony. At the time of the September 2014 agreed order, the parties had rekindled their relationship and were romantically involved. In fact, Keith was frequently cohabitating with Robin. Despite this rekindled relationship, Keith became involved in an unrelated paternity action. Robin, a licensed attorney, discussed the matter with him, and they determined that it would be advantageous to Keith in the paternity action if there was a custody order portraying him in the most positive light. Robin drafted the September 2014 agreed order with this goal in mind and informed Keith that "[t]his is as true joint custody as we can get."[3] Ambiguities in a written contract are construed strictly against the drafter. *Byme, Inc. v. Ivy*, 367 Ark. 451, 459, 241 S.W.3d 229, 236 (2006); *Universal Sec. Ins. Co. v. Ring*, 298 Ark. 582, 586, 769 S.W.2d 750, 752 (1989). While Robin testified that she never intended to share joint legal custody with Keith, Keith testified that he believed at the time they entered into the

---

[3]At the time the order was drafted and was entered, Robin was not technically acting as Keith's counsel, although she admitted that she provided him with legal advice regarding the order. She further admitted her actions could be construed as having acted as his attorney during the drafting and the negotiation of the September 2014 agreed order. Shortly thereafter, the parties began a formal attorney-client relationship.

September 2014 custody agreement that he was receiving joint custody of the children. The court clearly found Robin's testimony to be less than credible. The trial court specifically stated that Robin's testimony and demeanor on the witness stand showed an erratic but consistent effort to manipulate events to support future litigation. When the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Riddick v. Harris*, 2016 Ark. App. 426, 501 S.W.3d 859. Based on the foregoing, we cannot hold that the trial court's decision to treat the September 2014 order as one granting joint custody was clearly erroneous.[4]

### B. Material Change of Circumstances

Next, we turn to whether there had been a material change of circumstances. When a change of custody is sought in a joint-custody arrangement, the circuit court first must determine that there has been a material change of circumstances. *Singletary*, *supra*. Only after meeting that threshold will the court then consider what is in the best interest of the children. *Id*.

Here, at the time the September 2014 custody order was entered, Robin and Keith were engaged in a romantic relationship and were practically, if not actually, cohabitating.

---

[4] We note that Robin also argues that the trial court erred in concluding that her actions constituted a constructive fraud. A de novo review of the record, however, reveals that there was sufficient evidence from which to support the trial court's findings without resorting to the trial court's constructive-fraud determination. Thus, even assuming Robin's argument is correct in this regard, the outcome remains the same. We can affirm the circuit court when it reaches the right result, even though it may have announced the wrong reason. *Delgado v. Delgado*, 2012 Ark. App. 100, 389 S.W.3d 52.



Not long after, their relationship soured, and the parties once again separated. After the separation, Robin and Keith's relationship devolved into disharmony and discord. Evidence of the deterioration and troubled nature of their relationship was presented to the court by both Keith and Robin during a highly contested and adversarial three-day hearing.[5] When the parties have fallen into such discord that they are unable to cooperate in sharing physical care of their children, this constitutes a material change in circumstances affecting the children's best interest. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001). We have reversed the continuation of a joint-custody arrangement on a motion to modify custody when "there was a mountain of evidence . . . demonstrating that the parties could no longer cooperate in reaching shared decisions in matters affecting their children." *Doss v. Miller*, 2010 Ark. App. 95, at 9, 377 S.W.3d 348, 355; *see also Stibich v. Stibich*, 2016 Ark. App. 251, at 5, 491 S.W.3d 475, 479 (quoting *Gray v. Gray*, 96 Ark. App. 155, 157, 239 S.W.3d 26, 29 (2006)) ("Regardless of whether joint custody is favored, our law remains that 'the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the children's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is reversible error where the cooperation between the parents is lacking.'"). Based on our de novo review of the extensive and voluminous record before us, we cannot conclude that the trial court's determination that there had been a material change of

---

[5]In fact, in her initial motion, Robin asserted that the parties had been engaged in "consistent hostility/conflict/upheaval" such that coparenting on a "joint-custody" basis was no longer possible.

circumstances[6] was clearly erroneous; nor do we have a definite or firm conviction that a mistake has been made.

## C. Best Interest

Next, we must determine whether the trial court erred in determining that it was in the best interest of the children to award custody to Keith. Once the material change of circumstances threshold requirement has been met, the court must then determine who should have custody with the sole consideration being the best interest of the child. *Acklin v. Acklin*, 2017 Ark. App. 322, ___ S.W.3d ___. Here, other than noting the attorney ad litem's recommendation that it was in the best interest of the children to grant Keith primary custody of the children, the trial court's opinion in this regard is practically silent. However, because there is a presumption that a circuit court made the findings necessary to support its judgment, we presume that the court considered the children's best interest when it awarded custody to Keith. *See Hoover v. Hoover*, 2016 Ark. App. 322, at 8, 498 S.W.3d 297, 301. Here, Robin presented evidence that she had been the primary caretaker for the children since their birth and that, while Keith was a good father to the children, he was not actively involved in the day-to-day parenting of the children. Instead, she asserted that she was primarily responsible for feeding, bathing, and dressing the children; taking them to school, doctor's appointments,

---

[6]We are aware that the trial court, as part of its material-change-of-circumstances analysis, found that Robin's conduct constituted a violation of Arkansas Code Annotated section 9-13-101(b)(1)(A)(iii) and that Robin challenges this particular finding. However, we need not address the correctness of the trial court's ruling, because there was sufficient other evidence of a material change of circumstances without the need to rely on that particular factor. As stated above, we can affirm the circuit court when it reaches the right result, even though it may have announced the wrong reason. *Delgado v. Delgado*, *supra*.

and extracurricular activities; and interacting with their school and teachers. Keith testified regarding the actions he took with respect to the care of the children, his relationship with them, their relationship with their extended family, his educational concerns, and his parenting philosophy. The trial court also had before it evidence of the parties' relationship with each other and their ability to interact with each other with respect to the children and visitation issues. The court even noted that it had considered the children's stated preference[7] as to their living arrangements before reaching its best-interest determination. The trial court weighed the evidence before it and determined that it was in the best interest of the children to award primary custody of the children to Keith. As stated above, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Riddick, supra.* We hold that on the facts before us and given our deference to the trial court in these circumstances, the trial court's decision was not clearly erroneous.

### D. Relocation

Robin asserts that she retained sole legal custody of the children and therefore had the absolute right to relocate under our supreme court's decision in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). As a result, she insists that the trial court erred in refusing her request to relocate and in awarding custody to Keith. Because we affirm the trial court's decision to award custody to Keith, Robin's relocation argument is moot.

---

[7]The ad litem testified that the children spontaneously asserted their preference to live with their mother. However, because of the circumstances surrounding the spontaneous declaration, the ad litem believed that the children may have been coerced into making the declaration.

## II.  *Posttrial Motions*

We now turn to Robin's  appeal of the trial court's posttrial rulings. Those issues suffer

from procedural difficulties. After the final order had been entered, Robin sought to have the

trial court recuse. On appeal, Robin spends the majority of her argument on the recusal issue.

She goes into great detail regarding how the judge's alleged bias and impropriety affected or

could have affected his decision on the merits and the evidentiary matters leading up to his

custody determination.[8] However, the posttrial motion to recuse only sought recusal; Robin

never requested a new trial or to have the custody award set aside on the grounds of judicial

bias or appearance of impropriety. Because she never requested that the custody award be

vacated or set aside due to bias, any discussion of recusal would have no effect on the custody

determination and would amount to an advisory opinion. [9] It is well settled that this court

does not render advisory opinions or answer academic questions.  *Wilson v. Pulaski Ass'n of*

*Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997).

Finally, Robin devotes one paragraph to her remaining issues on appeal: the award of

attorney's fees to opposing counsel and the ad litem; the order striking an affidavit in support

---

[8]In her recusal argument, Robin alleges that the trial court erred in not allowing her to present testimony of several witnesses at the hearing and alleges that the trial court's failure to do so violated her due-process rights.  However, it does not appear from our review of the record that Robin ever made these particular arguments below.  It is well settled that only the specific objections and requests made at trial will be considered on appeal. *Johnson v. State*, 303 Ark. 12, 792 S.W.2d 863 (1990); *Shaw v. State*, 299 Ark. 474, 773 S.W.2d 827 (1989). Arguments not raised below, even constitutional ones, are waived on appeal. *Tracy v. Dennie*, 2012 Ark. 281, 411 S.W.3d 702.

[9]"An advisory opinion is . . . an interpretation of the law without binding effect." *Hartness v. Nuckles*, 2015 Ark. 444, at 13, 475 S.W.3d 558, 567 (quoting *Black's Law Dictionary*, 35–36 (6th ed. 1990)).

of the recusal motion; and the order denying her request to vacate the ad litem appointment. She cites no facts or authority to support her arguments; in fact, she makes no independent argument in her brief whatsoever other than to incorporate her trial motions and briefs by reference. This is inadequate. Our supreme court has specifically stated that to allow counsel to incorporate trial arguments by reference would eviscerate our rules regarding briefing length and would render meaningless our holdings that we do not address arguments that are not sufficiently argued or briefed to this court. *See Ligon v. Stilley*, 2010 Ark. 418, at 20, 371 S.W.3d 615, 632. As a result, we cannot reach these issues on appeal.

For the foregoing reasons, we affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Law Office of Kathryn L. Hudson*, by: *Kathryn L. Hudson*; and *Pinnacle Law Firm, PLLC*, by: *Matthew D. Campbell*, for appellant.

Ballard & Ballard, P.A., by: *Andrew D. Ballard*, for appellee.