Cite as 2020 Ark. App. 126

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-77

| | | |
|---|---|---|
| | | **Opinion Delivered:** February 19, 2020 |
| KEITH W. EMIS | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| | APPELLANT | [NO. 60DR-10-1616] |
| V. | | |
| ROBIN M. EMIS | | HONORABLE MORGAN E. WELCH, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED |

## PHILLIP T. WHITEAKER, Judge

The appellant Keith Emis appeals a child-custody modification order issued by the Pulaski County Circuit Court. The court modified custody from primary custody in Keith to joint custody on a "shared custody" basis between Keith and appellee Robin Emis. Keith argues that the court erred in finding a material change of circumstances; that joint custody was not appropriate or in the best interest of the children; and that primary custody should be returned to him. Robin disagrees, claiming no error in the court's decision concerning a material change of circumstances or that the award of joint custody was appropriate to meet the best interest of the children.[1]

---

[1]In her appellate brief, counsel for Robin attempts to incorporate Robin's trial brief by reference. In a previous appeal, a former appellate counsel for Robin attempted the same thing. As we stated in our previous opinion, this is not appropriate. *Emis v. Emis*, 2017 Ark. App. 372, at 12, 524 S.W.3d 444, 452. Our supreme court has specifically stated that to allow counsel to incorporate trial arguments by reference would eviscerate our rules

In child-custody cases, we review the evidence de novo, but we do not reverse the findings of the trial court unless it is shown that they are clearly erroneous or contrary to the preponderance of the evidence. *Durham v. Durham*, 82 Ark. App. 562, 120 S.W.3d 129 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Price v. Price*, 2020 Ark. App. 74; *Williams v. Williams*, 2019 Ark. App. 186, 575 S.W.3d 156. After our de novo review, we are left with a firm conviction that a mistake has been made and that joint custody is not in the best interest of the children; therefore, we reverse and remand.

To assist in understanding our conclusion, we provide the following history of the parties' relationship. Keith and Robin were married, and twin boys were born during the marriage. Keith and Robin divorced in September 2011. At the time of the divorce, the twins were twenty-two months of age. In the decree, Robin was awarded custody, and Keith was awarded visitation. Though divorced, the parties briefly reconciled. In 2014, they petitioned the court to modify support, custody, and visitation. On September 5, 2014, the court entered an agreed order, which provided "the parties have joint physical custody of the minor(s), with legal custody vested in Plaintiff Robin Emis."[2]

---

regarding briefing length and would render meaningless our holdings that we do not address arguments that are not sufficiently argued or briefed to this court. *See Ligon v. Stilley*, 2010 Ark. 418, at 20, 371 S.W.3d 615, 632.

[2]The September 5, 2014 agreed order provided it was nunc pro tunc to May 1, 2012.

Keith and Robin have been embroiled in child-custody litigation since September 2014. Rather quickly after the entry of the agreed order, their relationship once again soured, and litigation ensued with both parties seeking an award of primary custody and with Robin also requesting the court's permission to relocate with the children to Florida.

On August 27, 2015, the trial court entered an order denying Robin's motions for relocation and for primary custody. Instead, the court granted Keith's request for a change in custody, finding that a material change in circumstances had occurred since the entry of the September 2014 agreed order and that joint custody was no longer in the best interest of the children. Robin appealed the change-of-custody determination, and we affirmed.[3] *Emis v. Emis*, 2017 Ark. App. 372. In affirming, we specifically noted that the parties' relationship had clearly devolved into disharmony and discord, and having given a de novo review of the extensive and voluminous record presented, we could not conclude that the trial court's determination that there had been a material change of circumstances was clearly erroneous; nor did we have a definite or firm conviction that a mistake had been made. *Emis*, 2017 Ark. App. 372, at 7–9, 524 S.W.3d at 450.

While the August 27, 2015 order was pending on appeal, the parties continued to pursue litigation before the circuit court. This subsequent litigation forms the basis for this current appeal. The circuit court had awarded custody to Keith in the August 2015 order. Approximately two months later, Robin filed a motion to change custody, seeking full

---

[3]Our opinion affirming the August 25, 2015 order of modification was delivered on June 7, 2017. *Emis v. Emis*, 2017 Ark. App. 372, 524 S.W.3d 444. A resolution of jurisdictional and finality issues necessitated the almost two-year delay in the decision on the merits. *Emis v. Emis*, 2017 Ark. 252, 508 S.W.3d 886; *Emis v. Emis*, 2016 Ark. App. 369.

3

custody of the children. In support of her motion, she alleged that Keith was, among other things, (1) engaging in a course of parental alienation; (2) denying her access to the information on the children and access to their lives; (3) generating public drama with the children's school; (4) engaging in tacky and cruel mind games to the detriment of the children; and (5) employing countless babysitters to care for the children instead of allowing her extra visitation. Keith moved to dismiss the motion alleging that Robin had failed to assert a material change in circumstances or that a change of custody would be in the best interest of the children. Keith also filed a motion to modify visitation[4] claiming that Robin was in violation of the custody order, was keeping the children from school, and had been erratic and nonresponsive.

Over the course of the next year, the parties filed numerous motions to show cause and for contempt and to modify visitation and custody. In each motion and response, both Keith and Robin highlighted the hostility between the parties and their inability to cooperate or co-parent without court intervention.

For example, on September 20, 2016, Robin filed an emergency motion for change of custody alleging (1) an imminent threat of physical harm claiming that Keith kept loaded guns within reach of the children; (2) increased parental alienation by interfering with her access to information and participation in the children's lives and generating public drama; and (3) imminent threat of mental/emotional abuse by contradicting the children's core religious beliefs, using profanity, talking disparagingly about her and other women, and

---

[4]The motion was combined with a motion to show cause and a motion for production of the children's passports. Robin also filed a motion to modify child support. None of these are issues on appeal.

4

calling the children by their nonpreferred names. She claimed that the children were manifesting distress in that they cried when they left her and had expressed anxiety about the conflicts and differences in the parenting dynamics.

As further examples, Keith likewise filed several emergency motions with the court for the return of the children. He claimed that Robin did not have a primary or stable residence; that she had removed the children from school early; and that she had refused to return the children on time or inform him of their location. Robin responded, alleging negligent supervision of academics; unstable/inadequate home environment; psychological abuse; safety concerns; inadequate supervision; health/safety/hygiene issues; and weaponization of the children.

For approximately three years, the parties continued to file pleadings, and the court held several custody hearings. Ultimately, during a highly contested and adversarial three-day hearing in which testimony was taken and thousands of pages of exhibits were introduced, both parties presented evidence of the deterioration and troubled nature of their relationship. As a result, the circuit court concluded that circumstances warranted a change of custody and then reimposed joint custody of the children on a "shared custody" basis. Keith appeals both the circuit court's material-change-of-circumstances finding and its decision to award joint custody.

We first address Keith's argument that the court erred in finding a material change of circumstances. For a change of custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody, and the burden of proving such a change is on the party seeking the modification. *Watts v. Watts*, 17 Ark.

App. 253, 707 S.W.2d 777 (1986). Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *White v. Taylor*, 19 Ark. App. 104, 717 S.W.2d 497 (1986). While custody is always modifiable, in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues, our courts require a more rigid standard for custody modification than for initial custody determinations. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). Custody awards are not made or changed to gratify the desires of either parent or to reward or punish either of them. *Watts*, *supra*.

Here, the circuit court concluded that there had been a material change of circumstances, citing seven facts warranting a change of custody: (1) the children's depression; (2) the increased conflict between the parents; (3) Robin's willingness to move to Little Rock; (4) the resolution of Robin's financial difficulties; (5) Robin's formation of a viable business plan; (6) the "disturbing" deposition testimony of one of the children; and (7) the children's stated preference that they wished to live with their mother.

On appeal, Keith argues that the children's stated preference cannot constitute a change in circumstances. He is correct because that preference had not changed since the last custody determination and because a child's preference is only a factor in determining best interest and not a material change. *See Goodman v. Goodman*, 2019 Ark. App. 75 (a child's preference about living with a particular parent is but one factor for the circuit court to consider in its best-interest analysis). He also argues that the factual findings that relate to the positive changes in Robin's circumstances are not sufficient, standing alone, to justify a

change in custody. In that, he is also correct. *Fudge v. Dorman*, 2017 Ark. App. 181, 516 S.W.3d 306 (circumstances of the noncustodial parent is not alone sufficient to justify a change of custody); *see also Middleton v. Middleton*, 83 Ark. App. 7, 113 S.W.3d 625 (2003).

However, while we agree with some of Keith's arguments as to the individual findings, this court does not examine the circuit court's findings in isolation; instead, we evaluate changed circumstances on a case-by-case basis. *See Ward v. Ward*, 2019 Ark. App. 430, at 4. In doing so, we examine whether all the relevant factors, considered in the aggregate, support a modification of custody. *Boudreau v. Pierce*, 2011 Ark. App. 457, at 13, 384 S.W.3d 664, 672.

Having reviewed the court's findings, we conclude that, taken as a whole, the evidence was sufficient to support the court's material-change determination. In addition to the facts mentioned above, the court also considered the effect that the previous change in custody was having on the children. The court found that there was evidence that the children were depressed and that this depression was affecting their academic performance. Moreover, after hearing the deposition testimony of one of the children, the court found that the child seemed to be seriously conflicted and affected by the unequal status between the parents. The court described the child's testimony as "disturbing" and, in its concern for the well-being of the child, ordered counseling. The circuit court clearly believed that the child's mental health had suffered since the previous change in custody. As a matter of law, there are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving children. *Keith v. Keith*, 2013 Ark. App. 700, 430 S.W.3d 845; *Judkins v. Duvall*, 97 Ark. App. 260, 248

7

S.W.3d 492 (2007). These facts alone support the material-change-of-circumstances determination and were sufficient to allow the circuit court to consider whether a change of custody would be in the best interest of the children.

While we agree that there was sufficient evidence to support a finding of a material change, we conclude that the circuit court erred in awarding joint custody in these circumstances. Our law in this area is well defined. We have repeatedly held that the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is reversible error where cooperation between the parents is lacking. *Stibich v. Stibich*, 2016 Ark. App. 251, at 5, 491 S.W.3d 475, 479; s*ee also Hewett v. Hewett*, 2018 Ark. App. 235, at 6, 547 S.W.3d 138, 141 (reversing and remanding the joint-custody award; holding that if the parties' inability to get along and their overt hostility toward each other amounted to a material change in circumstances, awarding joint custody was in direct violation of our case law that holds joint custody is inappropriate when cooperation between the parties is lacking); *Li v. Ding*, 2017 Ark. App. 244, at 12, 519 S.W.3d 738, 744 (reversing and remanding the joint-custody award because the circuit court (1) found the parties had "significant disagreement" regarding school choice and parenting skills, had "poor" communication, and were "very rigid" in their thinking and (2) ordered the parties to take four one-day parenting classes to "hopefully" help their communication with one another, which the circuit court described as "completely failing").

In *Stibich*, our court reversed and remanded the circuit court's joint-custody award because the parties did not possess the willingness and ability to cooperate in reaching shared

decisions regarding their children. *Stibich*, 2016 Ark. App. 251, at 6, 491 S.W.3d at 479. Instead, the parties were involved in lengthy, contentious litigation concerning custody, could not agree on anything, and fought about even the most insignificant matters. *Id.*, 491 S.W.3d at 476.

Here, as in *Stibich*, the parties have been involved in lengthy, contentious litigation concerning custody. Both parties are engaged in an escalating power struggle, and they are not opposed to engaging law enforcement and governmental authorities to gain the upper hand. Like *Stibich,* the parties here cannot successfully communicate or agree on almost anything and fight about such matters as haircuts, religion, and education. In fact, they cannot even come to an amicable agreement on the names of their ten–year–old children.

Our de novo review of the record makes clear that joint custody is simply not an option. Accordingly, we are left with a firm conviction that the circuit court made a mistake when it concluded that joint custody was proper. Therefore, we reverse the circuit court's award of joint custody and remand this case to the circuit court for an award of custody based on its determination of the best interest of the children.

Reversed and remanded.

GLADWIN and HARRISON, JJ., agree.

*Taylor & Taylor Law firm, P.A.*, by: *Andrew M. Taylor*, *Tasha C. Taylor*, and *Jennifer Williams Flinn*, for appellant.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellee.