Cite as 2025 Ark. App. 232

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-23-682

| | |
|---|---|
| KEITH W. EMIS<br><br>APPELLANT<br><br>V.<br><br><br>ROBIN M. EMIS<br><br>APPELLEE | Opinion Delivered April 16, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60DR-10-1616]<br><br><br>HONORABLE CASEY R. TUCKER, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellant Keith Emis appeals a Pulaski County Circuit Court order he contends improperly modified a child-custody order without a finding of a material change of circumstances.[1] Keith claims that the circuit court materially altered the terms of its prior orders and significantly diminished his decision-making authority (1) by limiting his ability to sign his children up for extracurricular activities and (2) by ordering the children to remain in therapy with their court-appointed therapist. For the following reasons, we affirm.

This appeal arises from the highly contentious relationship between Keith and his ex-wife, Robin Emis (now Vail). Keith and Robin were married in April 2009. Approximately

---

[1]Robin filed a notice of cross-appeal in this matter but later notified this court of her decision to abandon it.

six months later, Robin gave birth to twin boys. Keith and Robin's marriage, however, was short-lived, and in April 2010, Robin filed for divorce. Their divorce became final in September 2011. At the time of the divorce, the twins were twenty-two months of age; they are now fifteen years old.

During the last thirteen years, custody over these two children has been vigorously challenged by both parties at both the circuit court and appellate levels. The case has been before this court on three separate occasions, and our record has grown to fifty-four volumes and over eighteen thousand pages of record. Just since the last remand in March 2020, the parties have filed thirteen motions to modify custody or visitation or for contempt, requiring nine days of hearings.

In the divorce decree in 2011, Robin was awarded custody, and Keith was awarded visitation. During a period of brief reconciliation between the parties in 2014, Robin filed a petition with the court to modify support, custody, and visitation. Consequently, on September 5, 2014, the court entered an agreed order, which provided that "the parties have joint physical custody of the minor(s), with legal custody vested in Plaintiff Robin Emis."[2]

Rather quickly after the entry of that agreed order, the parties' relationship once again soured, and litigation ensued with both parties seeking an award of primary custody and with Robin also requesting the court's permission to relocate with the children to Florida.

---

[2]The order was entered nunc pro tunc to May 1, 2012.

On August 27, 2015, the circuit court entered an order denying Robin's motions for relocation and for primary custody. Instead, the court granted Keith's request for a change in custody, finding that a material change in circumstances had occurred since the entry of the September 2014 agreed order and that joint custody was no longer in the best interest of the children. Robin appealed the change-of-custody determination, and we affirmed.[3] *Emis v. Emis*, 2017 Ark. App. 372, 524 S.W.3d 444. In affirming, we specifically noted that the parties' relationship had clearly devolved into disharmony and discord, and having given a de novo review of the extensive and voluminous record presented, we could not conclude that the circuit court's determination that there had been a material change of circumstances was clearly erroneous; nor did we have a definite or firm conviction that a mistake had been made. *Emis*, 2017 Ark. App. 372, at 7–9, 524 S.W.3d at 450.

While the August 27, 2015 order was pending on appeal, the parties continued to pursue litigation before the circuit court. This subsequent litigation formed the basis for a second appeal. Approximately two months after the circuit court awarded custody to Keith in the August 2015 order, Robin filed a motion to change custody, seeking full custody of the children. In support of her motion, she alleged that Keith was, among other things, (1) engaging in a course of parental alienation; (2) denying her access to information on the

---

[3]Our opinion affirming the August 25, 2015 order of modification was delivered on June 7, 2017. *Emis v. Emis*, 2017 Ark. App. 372, 524 S.W.3d 444. A resolution of jurisdictional and finality issues necessitated the almost two-year delay in the decision on the merits. *Emis v. Emis*, 2017 Ark. 52, 508 S.W.3d 886; *Emis v. Emis*, 2016 Ark. App. 369.

children and access to their lives; (3) generating public drama with the children's school; (4) engaging in tacky and cruel mind games to the detriment of the children; and (5) employing countless babysitters to care for the children instead of allowing her extra visitation. Keith moved to dismiss the motion, alleging that Robin had failed to assert a material change in circumstances or that a change of custody would be in the best interest of the children. Keith also filed a motion to modify visitation, claiming that Robin was in violation of the custody order, was keeping the children from school, and had been erratic and nonresponsive.

Over the course of the next year, the parties filed numerous motions to show cause and for contempt and to modify visitation and custody. In each motion and response, both Keith and Robin highlighted the hostility between the parties and their inability to cooperate or co-parent without court intervention.

For example, on September 20, 2016, Robin filed an emergency motion for change of custody alleging (1) an imminent threat of physical harm, claiming that Keith kept loaded guns within reach of the children; (2) increased parental alienation by interfering with her access to information and participation in the children's lives and generating public drama; and (3) imminent threat of mental and emotional abuse by contradicting the children's core religious beliefs, using profanity, talking disparagingly about her and other women, and calling the children by their nonpreferred names. She claimed that the children were manifesting distress in that they cried when they left her and had expressed anxiety about the conflicts and differences in the parenting dynamics.

As further examples, Keith likewise filed several emergency motions with the court. He claimed that Robin did not have a primary or stable residence; that she had removed the children from school early; and that she had refused to return the children on time or inform him of their location. Robin responded, alleging negligent supervision of academics; unstable and inadequate home environment; psychological abuse; safety concerns; inadequate supervision; health, safety, and hygiene issues; and weaponization of the children.

For approximately three years, the parties continued to file pleadings, and the court held several custody hearings. Ultimately, during a highly contested and adversarial three-day hearing in which testimony was taken and thousands of pages of exhibits were introduced, both parties presented evidence of the deterioration and troubled nature of their relationship. As a result, the circuit court concluded that circumstances warranted a change of custody and then reimposed joint custody of the children on a "shared custody" basis. As for the division of legal custody, the court advised the parties to consult with one another on all matters regarding the children but granted Keith authority over all educational matters regarding the children, and Robin was granted authority for all medical and other needs of the children (except counseling as ordered by the court). The court ordered the parties and the children to attend individual counseling and family sessions if the children's counselor deemed it appropriate. The court further ordered the parties to attend a co-parenting

seminar or class as recommended. Keith appealed both the circuit court's material-change-of-circumstances finding and its decision to award joint custody.[4]

On appeal, however, we reversed the circuit court's award of joint custody, finding that joint custody was simply not an option in this case. We noted that the parties had been involved in lengthy and antagonistic litigation concerning custody. Both parties were engaged in an escalating power struggle and were not opposed to engaging law enforcement and governmental authorities to gain the upper hand. We noted that they were unable to successfully communicate or agree on almost anything and would fight about such matters as haircuts, religion, and education. In fact, they could not even come to an amicable agreement on the names they were to call their ten-year-old children. We then remanded for the circuit court to base the custody award on its determination of the best interest of the children.

On remand, on April 28, 2020, the court entered an order granting "sole custody" of the children to Keith subject to Robin's right to visitation as set forth in the order. Regarding the parties' responsibilities as to extracurricular activities, the order provided:

> (l) The parties shall be responsible for transporting the children to and from school, church and sports related extracurricular activities while the children are in his or her care and custody.

> (m) If the children have an extracurricular activity or school event, [Robin] SHALL DELIVER the children to [Keith] one hour before designated to leave [Keith's] home.

---

[4]Only three months later, and before the record was lodged with this court, Robin filed a motion for emergency and permanent modification of joint custody, alleging that Keith had "interfered with medical treatment, extracurricular activities, haircuts, visitation, academic advancement, social networking, and the twins' birthday."

[Robin] SHALL BE PROVIDED a schedule of the extracurricular activities and may attend. [Robin] shall not approach the sideline, bench or dugout and interfere with the children during the games, practices or school activities or events, and SHALL NOT interfere with the extracurricular or school activities in any way.

Within the year, and following another emergency petition, on December 23, 2020, the court granted an emergency order (1) clarifying the parties' rights with respect to visitation over Christmas and phone calls and (2) ordering the parties to use the app Our Family Wizard (OFW) for communication.

On March 16, 2021, the court entered another emergency order. In this order, the court required the parties to attend co-parent counseling; appointed an attorney ad litem for the children; ordered telephone and Zoom visits; and required the parties to maintain a calendar of visitation exchanges documenting the reasons for missing pick up or drop off times. As for extracurricular activities, the order stated:

> 3. The Court recognizes that the minor children are enrolled in Cotillion. If a Cotillion event falls during [Robin's] visitation, [Robin] shall take the minor children to the Cotillion-event. [Robin] shall return all minor children's clothes for Cotillion to [Keith] at the end of her weekend visitation.

> 4. The Court recognizes that the minor children are enrolled in an after-school extracurricular activity at D-1 Training from 3:30pm to 4:30pm Monday through Friday. The minor children do not have to attend D-1 on Thursdays and the Friday on which [Robin] has weekend visitation with the minor children.

The court next entered an order on October 5, 2021, denying Keith's emergency motion to restrict visitation and for contempt. It ordered Robin to inform Keith two weeks in advance if leaving town with the children; continued the order for co-parent counseling; ordered the parents to provide healthy meals to the children; prohibited them from making

7

inflammatory comments about the other party or about litigation; and ordered the children into counseling with a court-appointed therapist.

On May 12, 2022, the court entered an order with respect to the parties' requests for modification of custody. As for extracurricular activities, the order provided:

> 13. The parties shall be responsible for transporting the children to and from school, church and sports related extracurricular activities while the children are in his or her care and custody. [Robin] SHALL BE PROVIDED a schedule of the extracurricular activities.

> 14. If the children have an extracurricular activity, [ROBIN] shall not approach the sideline, bench or dugout and interfere with the children during the games, practices or school activities or events, and SHALL NOT interfere with the extracurricular or social activities in any way. [Robin] may attend all competitions and games associated with the minor children's extracurricular activities. For practices, [Robin] shall drop off and pick up the minor children and shall not attend or stay at the practices. [Robin] may be required to purchase separate equipment for the activities, if applicable.

> 15. Regarding the minor children's extracurricular activities, in the future [Keith] shall not sign the minor children up for extracurricular activities without the approval of the minor children by written agreement. Furthermore, the extracurricular activities shall not conflict with [Robin's] visitation unless [Robin] has given her written permission that the minor children participate in such activities. [Robin] shall not unreasonably withhold approval once the children have signed off in agreement they want to participate in an activity. Once given, [Robin] may not withdraw her permission during the season or period in which the extracurricular activity runs, and the minor children shall attend all practices, events, games or competitions unless good cause is shown. The minor children shall be entitled to speak and embrace [Robin] at the conclusion of the games or competitions for up to ten (10) minutes. [Robin] shall in no way interfere with the extracurricular activities.

With that backdrop in mind and bringing us to the basis of the current appeal, when Robin failed to take the children to preseason football practice the summer of 2022, Keith filed another emergency motion seeking an ex parte order regarding the rights and

8

responsibilities of the parties with respect to the children's extracurricular activities. On August 23, 2022, the circuit court, in an effort to reduce conflict between the parties, entered an order temporarily modifying the foregoing paragraphs:

Paragraph 13:

The parties shall be responsible for transporting the children to and from school and church activities while the children are in his or her care and custody. If the children have an extracurricular activity or school event, [Robin] shall deliver the child involved in the extracurricular activity or school event to [Keith] at his home one hour before the designated event. When [Keith] obtains the schedule for a school event or extracurricular activity or is otherwise notified of a schedule change, he SHALL FORWARD A COPY TO [ROBIN] so she may attend said event or activity.

Paragraph 14:

If the children have an extracurricular activity, [Robin] SHALL NOT approach the sideline, bench or dugout and interfere with the children during games, practices or school activities or events, and SHALL NOT interfere with the extracurricular or school activities in any way. [Robin] may attend all competitions and games associated with the minor children's extracurricular activities. The minor children shall be entitled to speak and embrace [Robin] at the conclusion of the games or competitions for up to ten (10) minutes.

Paragraph 15:

Regarding the minor children's extracurricular activities, in the future [Keith] SHALL NOT sign the minor children up for extracurricular activities without the approval of the minor children by written agreement obtained from their AAL.

After a hearing on April 11, 2023, the court entered its final order, dated June 22, 2023. It is from this order that Keith now appeals. In it, the circuit court denied all pending motions and petitions for contempt; it denied Keith's motions for modification of visitation, finding that he had failed to prove a material change of circumstances; it left in place and made permanent the August 23, 2022 modifications to the court's May 12, 2022 order; it

declined to appoint an attorney ad litem unless and until either party filed a motion affecting the minor children; it outlined the parameters for the children's use and possession of their cell phones; and it granted the court-appointed counselor's request to be relieved. Additionally, the circuit court appointed a new therapist; required Keith to ensure that the children attended counseling; declared that "[n]either party may unilaterally stop counseling without approval from Court"; required the parties to fully cooperate with all recommendations of the counselor; and explained that the parties may participate in counseling only as requested by the therapist. As for extracurricular activities, the order provided:

> 8. Per the Court's August 23, 2023 order [Keith] SHALL NOT sign the minor children up for extracurricular activities without the approval of the minor children by written agreement obtained from their AAL. If there is no AAL then their written agreement to participate shall be obtained by the counselor. Until the children have a new therapist, [Keith] may continue all extracurricular activities.

It is in this context that we analyze the circuit court's decision requiring that the children's therapist or their ad litem ascertain, without parental influence, the children's wishes regarding extracurricular activities and its decision ordering the children to attend counseling; denying either party the right to unilaterally stop counseling without approval from the court; and directing them to fully cooperate with all recommendations of the counselor.

Child-custody cases are reviewed de novo on appeal, but we will not reverse a circuit court's findings of fact unless they are clearly erroneous. *Carrillo v. Morales Ibarra*, 2019 Ark. App. 189, 575 S.W.3d 151. A finding of fact is clearly erroneous if, after reviewing all the

evidence, the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.* Whether a circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses; therefore, we give special deference to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the circuit court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id.* The primary consideration in child-custody cases is the welfare and best interest of the child; all other considerations are secondary. *Id.*

Keith maintains that the April 28, 2020 order granted him sole legal custody, that the June 22, 2023 order significantly diminished his decision-making authority, and that the circuit court was without authority to modify "legal custody" without a finding of a material change in circumstances. His argument fails for several reasons.

First, the circuit court did not modify custody in this instance—Keith retained sole legal custody of the children. Second, under the unique facts of this case, we are not left with a definite and firm conviction that the court made a mistake in continuing to craft detailed parameters in its effort to effectuate a resolution beneficial to (and in the best interest of) the children. Notably, it is clear from our de novo review of the record that, while both parties clearly care for their children, their acrimonious and contentious relationship with each other has made co-parenting over the past decade virtually impossible. It is just as clear that their inability to co-parent has further negatively impacted the children. To date, every

11

attempt by the circuit court to fashion a remedy to facilitate cooperation between the parties for the benefit of the children has had limited success.

Case in point—the circuit court's most recent attempt to create an arrangement whereby the children would be allowed to express their interest (or disinterest) in extracurricular activities without undue influence from either parent. In May 2022, the circuit court ordered that Keith not sign the children up for extracurricular activities without their written approval. The court further ordered that such activities could not conflict with Robin's visitation unless Robin gave her written permission, which could not be unreasonably withheld. This proved unworkable within three short months.

As a result, in August 2022, the circuit court, in an effort to reduce the parties' conflict, temporarily revised its order with regard to extracurricular activities. In doing so, the court stressed that its previous May 2022 order was meant to address the parenting-time concerns of both parents and to avoid further conflict for the children. Instead of preventing conflict, however, the prior order had caused "additional conflict that had previously been addressed by Judge Morgan Welch." As a result, the August 2022 revised order, in addition to setting forth the parties' responsibilities for transportation to and from those activities and setting guidelines for Robin's participation in such events, directed that Keith refrain from authorizing extracurricular activities without the written approval of the children obtained from their attorney ad litem. Those parameters concerning extracurricular activities were permanently adopted in the June 2023 order with the additional provision that the approval could be obtained by the children's therapist if no ad litem had been appointed.

As stated above, after over a decade of attempted co-parenting, the parties have been unable to set their differences aside for the benefit of their children. The above scenario is but one example of such conflict. Our record is replete with evidence of how the parents' acrimonious relationship has detrimentally affected the health and well-being of these children and how both Keith and Robin repeatedly sought the court's intervention in the most minute details of their parenting arrangements. It is patently clear that the parties are unable to beneficially parent these children without constant court intervention and court-mandated cooperation.

Despite his prior requests for intervention, Keith now complains that by attempting to craft a resolution designed to mitigate the continuous conflicts between the parties, the circuit court improperly compromised his decision-making authority as the children's legal and primary custodian without first finding that a material change of circumstances had occurred. In *Nalley v. Adams*, 2021 Ark. 191, 632 S.W.3d 297, our supreme court held that a material-change-in-circumstances analysis was not triggered when the circuit court did not order a change in custody but rather made specific adjustments in parenting time. Here, given that Keith retained legal custody over the children, and the court made only those adjustments to the prior order that were critical to ensure the physical and mental well-being of the children, a material-change-in-circumstances analysis was not triggered in this case.

Moreover, our supreme court "ha[s] repeatedly held . . . that the primary consideration in domestic relations cases is the welfare and best interest of the children and that all other considerations are secondary." *Moix v. Moix*, 2013 Ark. 478, at 10, 430 S.W.3d

680, 686. So has this court. *E.g.*, *Henderson v. Simpson*, 2025 Ark. App. 40, 705 S.W.3d 15; *Grimsley v. Drewyor*, 2019 Ark. App. 218, 575 S.W.3d 636. Taking this admonition seriously and acknowledging that the purpose behind the material-change-of-circumstances standard in cases involving the modification of custody is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues, we conclude that, under the extraordinary facts of this case, it is clear that the children cannot achieve stability and that repeated litigation will likely occur without the revisions made by the circuit court here. Accordingly, while the nature of the parties' conflict has not changed over the years, and thus the circuit court may be correct in its conclusion that there had not been a material change of circumstances, their discord has been consistent, ongoing, and enduring, and it is clearly detrimental and damaging to the well-being of the children—and it is their welfare that is our primary consideration. Thus, in our opinion, the circuit court's revisions are necessary to ensure the safety, security, and welfare of these children.

Finally, as to the provisions related to the extracurricular activities, Keith appears to have acquiesced in their adoption. In his pretrial memorandum, Keith acknowledged the discord between the parties regarding the children's participation in extracurricular activities and requested that the circuit court make the provisions from the prior order permanent, stating, "The Court should make the modifications in the August 23, 2022 Order part of the final order." The circuit court did just as Keith requested. And it was also at his request that the circuit court allow the approval to be obtained by a therapist if there was no ad litem appointed. At the April 11, 2023 hearing, Keith's counsel expressed concern that continued

14

appointment of an ad litem in a closed case could perpetuate further litigation and asked that the approval be obtained through the children's therapist if there was no appointed ad litem. The court incorporated Keith's suggestion into its final ruling. Under the invited-error doctrine, an appellant may not complain on appeal of an erroneous action of the circuit court if the appellant has induced, consented to, or acquiesced in that action. *Cheri v. Cheri*, 2024 Ark. App. 288.

As for the "indefinite" order on counseling, Keith argues that neither party ever requested that the children receive therapy and that there was no analysis conducted by the circuit court to determine whether therapy was in the children's best interest. While it is true that Keith's counsel at the April 11, 2023 hearing expressed some concern that therapy was hurting the children more than helping, counsel also stated on the record that they did not dispute that the children needed some type of therapy. Additionally, the court had before it testimony and evidence, including multiple psychological evaluations of the children, regarding the psychological impact the divorce and ensuing child-custody dispute had on the children. Under these circumstances, we cannot say the circuit court clearly erred in ordering individual counseling for the children. As for Keith's argument that the counseling provision is indefinite, we remind him that a circuit court maintains continuing jurisdiction in domestic-relations cases, such as divorce proceedings, child-custody disputes, child-support cases, and guardianship proceedings. *Atkinson v. Ledbetter*, 2014 Ark. App. 245; *see Hollis v. Hinton*, 2022 Ark. App. 99; *Wilson v. Wilson*, 2016 Ark. App. 191, 487 S.W.3d 420. Thus, the court's order is, by its very nature, not indefinite.

15

For the foregoing reasons, we affirm.

Affirmed.

KLAPPENBACH, C.J., and BROWN, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor*, *Tasha C. Taylor*, and *Jennifer Williams Flinn*, for appellant.

*McKinney & McKinney, PLLC*, by: *Quincy W. McKinney*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.