Cite as 2024 Ark. App. 229

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-23-344

| | | |
|---|---|---|
| JASON REYNOLDS | | Opinion Delivered April 3, 2024 |
| | APPELLANT | APPEAL FROM THE PRAIRIE COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 59SDR-17-41] |
| V. | | |
| MARY "KATIE" REYNOLDS | | HONORABLE CRAIG HANNAH, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Jason Reynolds appeals the Prairie County Circuit Court's September 29, 2022 order denying his petition for modification of custody of his minor children (MC1 and MC2). Jason argues that the circuit court erred in finding that he failed to prove a material change in circumstances to warrant a modification of custody and that the circuit court's initial custody decision no longer meets the children's best interest. We affirm.

Jason and Kati[1] married on March 30, 2010. On October 26, 2017, Jason filed a complaint for divorce in which he sought custody of MC1 and MC2. Kati also sought custody of the children. The parties were divorced by an order entered on March 28, 2019, which awarded primary custody of the children to Kati. Jason was awarded visitation every

---

[1]Though the caption refers to the appellee as Mary "Katie" Reynolds, she refers to herself throughout her brief as "Kati." For purposes of this opinion, then, we will refer to the appellee as Kati.

other weekend from after school Thursday to Monday morning; half of the summer divided as the first two weeks of June and July and the first week of August; and alternating years for spring break and other holidays, except Christmas, which was divided in two alternating time frames. In awarding custody to Kati, the court found that she was "credible, honest, and the most likely to facilitate a relationship between the noncustodial parent and the children." The decree contained a provision prohibiting either party from having "overnight guests of a romantic nature when the minor children are in his or her care and custody."[2]

On November 12, 2019, Jason filed a petition for contempt and for modification of visitation and child support in which he also sought a modification of custody, alleging that a material change of circumstances had occurred because Kati was "cohabiting" with a man to whom she was not married in violation of the circuit court's order. Jason specifically alleged that she was living in a house trailer "owned by her boyfriend . . . with whom she frequently co-habits." In addition, Jason made allegations that Kati was not allowing him reasonable time with the children on their birthdays, was not providing telephone communication outside of the times required by the divorce decree, and was intending not to allow him one-half of the Christmas vacation. He further asserted that Kati did not have suitable housing and that she was overmedicating MC1.

---

[2]Throughout this case, this phrase has been misstated or mischaracterized. For example, it has been referred to as a cohabitation clause, and the order on appeal includes the phrase "to whom they are not married." The misstatements, however, are not at issue.

At the June 25, 2020 hearing, Kati admitted that she was in a relationship with Kenny Williamson, who was married, and that she had moved into a house trailer on property owned by her and Williamson. Kati testified that Williamson did not live with her, but she acknowledged going with the children to Williamson's deer camp, including on a state youth-hunt weekend, and on a trip to Tennessee, but she said that Williamson slept in his truck. In its oral ruling, the circuit court stated that it was concerned about Kati's relationship with a married man but that it was not enough by itself to change custody. In an "amended final order" entered on August 17, 2020, the circuit court denied Jason's petition for contempt and modification of custody, finding there had been no material change in circumstances to support a modification. However, the circuit court ordered that Jason's summer visits were to begin at 5:00 p.m. instead of 6:00 p.m., Jason be allowed two hours of visitation with each minor child on the day before each child's birthday, and Jason have twenty-four hours of visitation for any state youth hunt that does not fall on his weekend. The circuit court also ordered the parties to keep each other informed as to the children's health, education, and extracurricular activities.

Two months later, on October 21, Jason filed a second petition for change of custody and contempt alleging that subsequent to the June 25 hearing, Kati and Williamson had shared a bedroom while on a beach vacation with the children. Jason also alleged that at the time of divorce, Kati was living in Hazen near the school but had since moved to a trailer home outside Hazen, making it harder for the children to participate in school functions,

Kati continued to interfere with telephone visitations, Kati continued to overmedicate MC1, and MC2 was failing in his first-grade schoolwork.

An attorney ad litem was appointed, and a hearing took place on September 22, 2022, at which time MC1 and MC2 were in seventh and second grades, respectively. Kati and Williamson both testified that they were no longer dating and were not living together, yet they jointly owned the land where Kati's mobile home was located, which was also where she lived at the time of the previous hearing. In regard to the 2020 beach trip, Kati testified that she took the children to the beach at the same time Williamson was there on a fishing trip with his friends. Although Williamson spent time with Kati and the children, Kati and Williamson denied that Williamson stayed overnight on the beach trip or at home when the children were present. Kati testified that neither of the children took any different medications than they did at the time of the June 2020 hearing and that the children attend the same school where she continues to work.

Jason testified that he has telephone visitation on Monday and Wednesday but is "lucky" to talk to the children any other time. He acknowledged that MC1 and MC2 have cell phones. Jason said that when MC1 does not answer his phone, he will call the number he has for MC2, explaining that "it's either dead or they're not answering" and that sometimes MC2 likes to talk and sometimes he does not. Jason said he was not told that one of the children was having a tooth pulled. Jason also testified about his name being listed after Williamson's on the emergency-contact and school-pickup lists. Jason testified that Kati was supposed to provide him all school information but did not. He claimed that he was not

aware the school district had a website, but when asked why he did not get online to check the children's grades or school calendar, Jason responded that he was not provided "access" to MC2's online information. Jason admitted that he had never called the school to express any concerns about the children or ask for a calendar of events. Jason also said that he knew about the children's grades.

In a September 29 order, the circuit court did not find Kati's or Williamson's testimony credible about their "not having intimate relations" while the children were present. The court found Kati in contempt for willfully violating the order prohibiting overnight guests of a romantic nature when the children are present and ordered her to pay $500 in attorney's fees to Jason's counsel. The court recognized that the attorney ad litem recommended that custody remain with Kati and that Jason be afforded more visitation. Consistent with the ad litem's recommendation, the court awarded Jason visitation on Thursday nights when he does not have weekend visitation and alternating weeks in the summer.

In regard to custody, the circuit court did not find that a material change of circumstances existed to support a modification of custody. The circuit court found that both Kati and Jason are good parents who care about their children and want what is best for them. The circuit court found that Kati had engaged in proscribed behavior with Williamson, which the court addressed in the contempt finding. The circuit court further found that no other circumstances existed to warrant a finding of a material change of circumstances. Regarding the children's school records, the court ordered Kati to list Jason

ahead of Williamson on the emergency-contact and school-pickup lists and to add Jason's wife to those lists. The circuit court further found that Kati has an affirmative obligation to ensure that Jason receives school reports and records, which she may discharge by providing him with school-login information or by providing written information directly to him. Jason timely appealed.

This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Williams v. Williams*, 2019 Ark. App. 186, at 14, 575 S.W.3d 156, 163. Whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, and this court gives special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.*, 575 S.W.3d at 163. There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children. *Dodd v. Gore*, 2013 Ark. App. 547, at 5.

While a circuit court retains jurisdiction to modify an initial custody award, the standard for modification is more stringent than it is for the initial determination. *Powell v. Marshall*, 88 Ark. App. 257, 265, 197 S.W.3d 24, 28–29 (2004). A party seeking to modify custody must prove that a material change of circumstances has occurred since the last order of custody or that material facts were unknown to the court when the decree was entered.

6

*Id.*, 440 S.W.3d at 28. If that threshold requirement is met, the court must then determine who should have custody with the sole consideration being the best interest of the child. *Evans v. McKinney*, 2014 Ark. App. 440, at 4, 440 S.W.3d 357, 359. If the threshold requirement of a material change in circumstances is not met, there is no need for a best-interest finding. *Ellington v. Ellington*, 2019 Ark. App. 395, at 6, 587 S.W.3d 237, 241. The reason for this more stringent standard for modifying custody is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Powell*, 88 Ark. App. at 265, 197 S.W.3d at 29.

Jason first contends that the circuit court erred in finding that there was no material change of circumstances sufficient to warrant a change in custody. Determining whether there has been a change of circumstances requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Ingle v. Dacus*, 2020 Ark. App. 490, at 7, 611 S.W.3d 714, 719. Thus, we look at whether there has been a material change in circumstances since issuance of the last order of custody, which is the August 17, 2020 "amended final order."[3]

---

[3]Citing *Gray v. Gray*, 96 Ark. App. 155, 239 S.W.3d 26 (2006), and *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009), Jason contends that that "the question is whether there has been a material change of circumstances from the original divorce decree." These cases do not support his proposition. *Gray* involved an initial request for modification following the divorce decree, and the case at bar does not. This is Jason's second request for modification of custody. *Stehle* involved a second request for modification of custody, and the supreme court looked to the first modification order to determine whether a material change of circumstances had occurred. Specifically, the court stated, "In

On appeal, Jason argues that the circuit court's finding of no material change of circumstances was clearly erroneous because there was evidence that Kati violated the order prohibiting overnight guests of a romantic nature, lacked credibility by lying to the circuit court, attempted to thwart his relationship with the children, and violated orders requiring her to supply school and medical information to him. Jason also asserts that the circuit court erred in placing the burden on him to show that Kati's "cohabitation" harmed the children.

Custody awards are not made or changed to punish, reward, or gratify the desires of either parent. *Powell*, 88 Ark. App. at 266, 197 S.W.3d at 29. A violation of the circuit court's previous orders does not compel a change in custody. *Id.*, 197 S.W.3d at 29. "To hold otherwise would permit the desire to punish a parent to override the paramount consideration in all custody cases, *i.e.*, the welfare of the child involved." *Id.*, 197 S.W.3d at 29 (quoting *Carver v. May*, 81 Ark. App. 292, 297, 101 S.W.3d 256, 260 (2003)). We have said that, even when a custodial parent willfully violates court orders, modification is not necessarily warranted because a court's contempt powers should be used prior to the more drastic measure of changing custody. *Geren Williams v. Geren*, 2015 Ark. App. 197, at 13, 458 S.W.3d 759, 768 (citing *Carver*, 81 Ark. App. at 297, 101 S.W.3d at 260; *Carter v. Carter*, 19 Ark. App. 242, 719 S.W.2d 704 (1986)).

---

order to avoid the relitigation of factual issues already decided, the courts will restrict evidence on a custodial change to facts arising since the issuance of the prior order." *Stehle*, 375 Ark. at 454, 291 S.W.3d at 579.

The circuit court considered all of Jason's allegations that he claimed supported a material change in circumstances, which included that Kati was violating the divorce decree's prohibition of overnight guests of a romantic nature when the children are present and complaints regarding telephone visitation and school and medical information. It is notable that the circumstances of Jason's first petition involved similar allegations and that since the entry of the last custody order, Kati's home and job as well as the children's schools have remained the same. Jason asserted that it was unknown at the time of the June 2020 hearing that Kati purchased property with Williamson. However, at the June 2020 hearing when Jason's counsel asked Kati who owned the trailer and land where she lived, Kati responded that they are in both her name and Williamson's name. Likewise, Jason's 2019 petition for modification alleged that Kati's house trailer was "owned by her boyfriend."

Change-of-custody decisions must be based on the particular facts and circumstances of each case in relation to the standard of the best interest of the child. *Hudgens v. Martin*, 2009 Ark. App. 462. In addition, credibility determinations are left to the circuit court, and we will not reweigh the evidence. *Glisson v. Glisson*, 2018 Ark. App. 21, at 11, 538 S.W.3d 864, 870. Here, the court found that both Kati and Jason are good parents. Although the circuit court made a credibility determination against Kati, it was specific to her testimony about her relationship with Williamson, and the court found her in contempt for violating the order prohibiting overnight guests of a romantic nature. Having reviewed the court's

findings, the record as a whole, and the applicable caselaw, we cannot say that the circuit court's finding that there was no material change of circumstances was clearly erroneous.[4]

Jason next contends that the circuit court erred in placing the burden on him to show that Kati's violation of the order prohibiting overnight guests of a romantic nature harmed the children. For support, Jason cites the circuit court's oral ruling denying his petition for modification in which the circuit court stated:

> The Supreme Court has came out -- the mere fact that cohabitation, in and of itself, they find is not a significant reason to change custody. I agree with everything you say about morals, a hundred percent. But I have to look at two things: is it happening, and has it had a detrimental effect on the boys? I do not agree with this. I think Ms. Reynolds has been less than honest, almost deceitful about her -- what -- characterizing her relationship. I don't think that -- I think they are in a relationship. And, because she has been dishonest, I'm going to find that she has been in contempt of the Court, and I'm going to assess her a five-hundred-dollar attorney's fee that she's going to have to pay you. But I haven't heard anything to show that she's a bad mom. She just needs to be honest with the Court about what's going on. A lot of times, people lie and most of the time they lie, it's about stuff that they don't need to lie about. You just come out honest, be honest about it, it makes things a lot easier. I find that Mr. Reynolds is a good dad, and I'm going to give him -- I think he needs to have some more time. The boys are older now, and I think, from the testimony I've heard, they need to spend some more time with their dad.

Jason also cites *Calhoun v. Calhoun*, 84 Ark. App. 158, 138 S.W.3d 689 (2003), arguing that this court reversed a denial of a custody modification where the circuit court stated that the appellant had failed to show that the evidence in support of a finding of

---

[4]In his brief, Jason quotes language from *Wallis v. Holsing*, 2023 Ark. App. 137, at 5, 661 S.W.3d 284, 287–88, without argument as to how it applies in this case. It is not the duty of this court to develop an argument for an appellant on appeal. *Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, at 7, 424 S.W.3d 368, 374.

material change had an adverse impact on the child. In reversing, this court held that the circuit court failed to consider the best interest of the child after finding a material change in circumstances. *Id.* at 163, 138 S.W.3d at 692. We explained:

> After the noncustodial parent has shown a material change in circumstances, rather than requiring the noncustodial parent to then show an adverse impact on the child, the court should weigh these material changes and consider the best interest of the child. Here, the court found there was a material change in circumstances but then placed an additional burden on appellant, that is, a showing of an "adverse impact" on the child, without simply weighing the child's best interest.
>
> We do not hold, however, that the circuit court should never consider whether there was adverse impact on the child when determining whether a material change in circumstances has occurred. In *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003), the Arkansas Supreme Court addressed the issue of whether the noncustodial parent showed a material change in circumstances. In holding that the noncustodial parent's evidence was insufficient to constitute a material change in circumstances, the court noted that the noncustodial parent "failed to demonstrate any actual harm or adverse effect." [*Id.* at 83, 110 S.W.3d at 739.] Accordingly, in some instances it may be the adverse impact on a child that makes a change in circumstances "material."

*Id.* at 162–63, 138 S.W.3d at 692.

There is no indication in the record that the circuit court placed the burden on Jason to show that Kati's violation of the order prohibiting overnight guests of a romantic nature harmed the children. Further, *Calhoun* is unlike this case because the circuit court here did not reach the issue of the best interest of the children because it did not find a material change of circumstances had occurred.

Because we affirm the circuit court's finding that no material change of circumstances occurred to support a modification of custody, we do not reach Jason's best-interest argument.

11

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellee.