Cite as 2026 Ark. App. 124

# ARKANSAS COURT OF APPEALS
## DIVISION 1
### No. CV-25-97

| | | |
|---|---|---|
| REAGAN HAYNES | | Opinion Delivered February 25, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40DR-14-146] |
| V. | | |
| JOHN C. HAYNES | | HONORABLE MAC NORTON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**CASEY R. TUCKER, Judge**

This case comes to us from a circuit court's order tailoring a remedy to protect the two children of a divorce while stopping short of changing custody. Reagan Haynes appeals the Lincoln County Circuit Court's order finding a material change in circumstances; ordering Reagan to provide a report from her primary-care physician following an in-person consultation regarding her medications, including medical marijuana; and ordering her to provide her ex-husband, John Haynes, with the receipts from her monthly marijuana purchases. Reagan raises three points: (1) the circuit court erred in finding a material change in circumstances; (2) the court erred in finding it was in the children's best interest for her to consult with her primary-care physician and provide a report from that physician regarding her medications, including marijuana; and (3) the circuit court violated her right to privacy,

which is guaranteed under the Arkansas Constitution, by ordering her to provide John with receipts from her purchases related to marijuana use. We affirm.

I. *Procedural History, Hearing, and Order*

Reagan and John divorced on February 22, 2016. They share two children, Minor Child 1 (MC1) (DOB November 23, 2009), who was six years old at the time, and Minor Child 2 (MC2) (DOB June 17, 2014), who was nineteen months old. In the original decree, which was entered when Reagan and John both lived in Star City, Arkansas, the parties were granted joint legal and physical custody of the children. Following Reagan's move to White Hall and John's move to Warren, the court entered an order in 2019 that modified custody, visitation, and child support: the parties continued to share legal custody of the children, and Reagan was the primary physical custodian with John having visitation. John, who works for the Arkansas Division of Correction, was living in Newport at the time of the hearing in this case. He has since moved to Forrest City.

On May 20, 2024, John moved for modification of custody seeking primary physical and legal custody of the children. The basis for his motion was that it had come to his attention that Reagan had obtained a medical marijuana card and was using marijuana in her home where the children live. It was John's belief that Reagan was not securing her marijuana to keep it away from the children. He also had reason to believe that Reagan was irritable with and mean to their children when she was under the influence of marijuana and that she was not keeping the children's home well supplied with food.

2

The hearing on John's motion was held on September 26. In addition to John and Reagan, both children, who were ages fourteen and ten, testified. Reagan, who is an eighth-grade math teacher, testified that she has complex posttraumatic stress disorder, anxiety, fibromyalgia, and nerve pain. She testified that she tried a prescription muscle relaxer and prescription painkiller before trying medical marijuana. When she started using marijuana, she stopped using the muscle relaxer and painkiller.

Reagan's psychiatrist referred her to a telemedicine doctor through whom she obtained her medical marijuana card. Although she renews her card through her telemedicine doctor on an annual basis, Reagan could not remember his name. Reagan now takes medical marijuana, Cymbalta, and Strattera in addition to vitamins and supplements. According to Reagan, she buys approximately fourteen to twenty-eight grams of marijuana a month. She could obtain as much as seventy grams a month using her card. Reagan spends approximately $75 to $85 a month on marijuana.

Reagan either smokes marijuana or takes gummies daily. She occasionally has friends over to use marijuana, and they sometimes use a bong. Reagan restricts her marijuana usage to her garage, which is also where she stores the marijuana and the accompanying paraphernalia. She uses a magnet on the door to the garage to signal to her children when they may enter. When the magnet is above the lock, the children must knock and wait for Reagan to say it is okay to enter. This gives Reagan time to put away the drug. Reagan testified that she needs private time once or twice a day for thirty minutes to an hour, and she spends this time in the garage. She has been teaching middle school approximately

eighteen years and has never been disciplined for anything related to marijuana usage. Reagan had had her medical marijuana card for about three years by the time of the hearing. She told the court that she made a mistake by not telling John and that she was sorry.

The children testified that they did not like the way the marijuana seemed to affect their mother's mood and behavior. According to the children, their mother does not neglect them due to marijuana usage, but she does not keep much food in the house and rarely cooks for them; instead, she frequently buys them fast food. MC1 testified that he sometimes cooks for himself and MC2. He also feels responsible for MC2 at times. MC1 became worried about their mother's marijuana usage, leading MC1 to take some of it from his mother's supply. He did not use the marijuana; rather, he took it in hopes that his mother would stop her usage. According to the children, Reagan spends a lot of time off limits to them in the garage and frequently has friends using marijuana with her. The children testified that after their father filed the motion to modify custody, their mother started doing a better job of keeping the house supplied with food and storing the marijuana securely. The children make good grades, have friends, and are involved in extracurricular activities. However, they both testified that they would prefer to live with their father.

John is married and, at the time of the hearing, lived in Newport during the work week then returned to his private residence in White Hall on the weekends. He testified that he is worried about the children's safety and their physical and mental wellbeing. John testified that Reagan had told him that some of her medications were causing her to be mean to the children. According to John, if he obtained primary custody, MC2 would attend

4

elementary school in the Newport School District, and MC1 would attend the charter high school. John testified that although he lives by himself during the work week, he has friends and coworkers in Newport that form a helpful support system. According to John, MC1 would be able to continue participating in Junior ROTC, and MC2 would be able to take dance or gymnastics in Newport.

John had never witnessed Reagan use marijuana but had smelled the odor coming from her garage. When asked how it would protect the children for him to be the custodial parent if Reagan still got the children on the weekend, John testified:

> To be honest with you, I don't know all the things that the Court could make it a better situation for them while they're there with her. I don't know if they can mandate counseling or therapy or anything like that, that would — to help make it better for them while they're there. Like I said, I don't know what stipulations like supervised visitation — things like that that could be added that would make it better for them.

John testified that he was open to orders or rulings other than modifying custody. On cross-examination, John testified that he would be agreeable to Reagan having supervised visitation if that was what the court thought was needed. He further stated, "I think there needs to be some sort of intervention done with the way the kids have been treated and are being treated."

The court did not rule from the bench but took the matter under consideration. Before the court issued its order, the parties notified it that John was being transferred to Forrest City effective October 14, 2024.

The circuit court entered its order on October 23. It found that Reagan had obtained her medical marijuana card about three years earlier without consulting her primary physician. The children testified regarding their mother's daily marijuana usage and that she was sometimes irritable with them after using. The court did not consider lack of food to be a significant problem but stated that Reagan probably could do better. The court recognized that Reagan had become more careful with her marijuana usage and storage since John filed his motion for custody modification. The court considered both John's and Reagan's careers and locations before stating that the children have attended school in White Hall for many years and are doing well there. The court recognized that the children expressed a desire to live with their father and have visitation with their mother.

The court found a material change in circumstances due to Reagan's use of marijuana and her failure to utilize marijuana appropriately thereby minimizing any adverse impact on the children. In spite of finding a change in circumstances, the court did not find that it would be in the best interest of the children to change physical custody due to John's work responsibilities. The court observed:

> Defendant's use of the medical marijuana concerns the Court, but that concern does not outweigh the Court's concern involving [John's] changing residences. Children need a routine and stability, and they are doing well in school in White Hall. Changing residences to Forrest City is a complete unknown in many respects involving the children.

The court then placed requirements on Reagan for her continued marijuana usage in order to meet its concerns, warning that her failure to abide by the rules could result in the court's modifying custody and/or visitation. The court imposed the following rules:

6

1. Meet with the children "forthwith" and explain to them why she is using marijuana and answer any questions. Provide the children with the court's list of rules.

2. Do not use marijuana in the presence of the children or any other persons. During the school week, only use marijuana after [MC2] is in bed.

3. Keep the garage door unlocked while using marijuana; continued use of signage to indicate her usage is acceptable.

4. Do not operate a car within four (4) hours of usage.

5. Lock away all marijuana and paraphernalia in a way that is only accessible to her.

6. Within sixty days have an in person consultation with her primary care physician to review all of the prescription and over-the-counter medications she is currently using in addition to the marijuana. The physician is to provide a written report regarding the medications Reagan should continue using and the reasons why and specifically address whether Reagan should continue using marijuana and to what extent. This report is to be provided to[Johns]'s attorney and the Court and will become part of the record.

7. [Reagan] shall keep the purchase receipts for her marijuana products each month beginning November 2024 and provide those receipts to [John] each month. The receipts should disclose the quantity, usage, potency and cost of the marijuana.

Reagan timely appealed.

## II. *Material Change in Circumstances*

Reagan argues that the circuit court erred in finding that a material change in circumstances had occurred due to her use of medical marijuana. We disagree.

We review child-custody cases de novo on the record but will not reverse the circuit court's findings unless they are clearly erroneous. *Reynolds v. Reynolds*, 2024 Ark. App. 229,

7

687 S.W.3d 584. A finding is clearly erroneous when, although there is evidence to support it, this court is left with the definite and firm conviction that a mistake has been made. *Id.* We give due deference to the circuit court's superior position to assess the credibility of the witnesses, their testimony, and the children's best interest. *Id.*

In considering whether there has been a material change in circumstances, this court considers only what has occurred since the entry of the last custody order. *Reynolds*, *supra*; *Redman v. Redman*, 2024 Ark. App. 562, 701 S.W.3d 40. We consider changed circumstances on a case-by-case basis. *Emis v. Emis*, 2020 Ark. App. 126, 597 S.W.3d 93; *Ward v. Ward*, 2019 Ark. App. 430. In doing so, we consider the factors in the aggregate. *Id.*

In the present case, the evidence, when considered in the aggregate, supports the circuit court's determination that a material change had occurred since the prior custody order. It was undisputed that since the last custody order, Reagan had obtained a medical marijuana card and had begun using marijuana daily. Although Reagan confined her usage to the garage, MC1 and MC2 were at home when she was using marijuana and knew she was doing so. They also knew that Reagan had friends who came over and used marijuana with her. MC1 was aware that Reagan and her friends sometimes used a bong. The children testified that Reagan spent a lot of time alone in the garage every day, and they were usually not allowed to join her. Moreover, MC1 testified that his mother no longer keeps enough food in the house or makes them meals, opting instead for fast food. The children also testified that the marijuana affected their mother's mood, making her hostile and irritable. The children were able to access the marijuana. MC1 was concerned about his mother to

such an extent that he stole some of her marijuana—not to use but to impress on her his concern.  MC1 also worried about the cost of the marijuana and its effect on the family's budget.  Both children testified they would prefer to live with their father even though it would mean moving a few hours away and changing to a new school district.

Having considered the evidence as a whole, we hold that it is sufficient to support the circuit court's determination that a material change in circumstances had occurred since the previous custody order.

### III. Requirement that Reagan Consult with Her Primary-Care Physician and Provide a Report

After determining that a material change in circumstances had occurred, the circuit court turned to the determination of the children's best interest.  The court found that it would not be in the children's best interest to change primary physical custody to John due to his work responsibilities and his very recent move to Forrest City, which had occurred since the hearing.  The court determined that the children needed routine and stability and were doing well in school in White Hall, while Forrest City remained a complete unknown.  However, the court was concerned about Reagan's marijuana use, which led it to impose the previously listed rules.

On appeal, Reagan argues that the court erred in finding it would be in the children's best interest for her to consult in person with her primary-care physician regarding her current medications, including marijuana, and obtain a report regarding what medications she should continue to use and the reasons for their use with a specific reference to whether

she should continue to use marijuana. Given the record before us, we cannot say that the circuit court clearly erred in doing so.

The polestar in child-custody cases is the best interest of the child. *Inmon v. Davis*, 2025 Ark. App. 494, 724 S.W.3d 657. We recognize the superior position of the circuit court in child-custody cases in that it carries the heavy burden of utilizing the fullest extent of its powers of perception in evaluating witnesses, the testimony, and the best interest of the child. *Jackson v. Littleton*, 2018 Ark. App. 511, 561 S.W.3d 352. As a result, the circuit court exercises wide latitude in crafting custody orders to ensure that the well-being and best interest of the children are protected. *See, e.g., Marler v. Binkley*, 29 Ark. App. 73, 776 S.W.2d 839 (1989) (affirming lower court's order prohibiting corporal punishment, ordering the mother to refer to the child's father as her father, ordering the mother to refrain from referring to the stepfather as the child's father, and ordering the mother to refrain from discussing adoption by the stepfather); *Hanson v. Hanson*, 2023 Ark. App. 363, 676 S.W.3d 8 (affirming circuit court's order making the father responsible for the child's medical decisions and prohibiting him from failing to give any ADHD medication unless it is recommended by a medical doctor); *Moix v. Moix*, 2013 Ark. 478, at 12, 430 S.W.3d 680, 687 (the public policy against romantic cohabitation is not a "blanket ban," because it cannot override the case-by-case determination of the best interest of the child; the circuit court must use its discretion to allow or prohibit romantic cohabitation on a case-by-case basis, considering the child's best interest in each). *See also* Ark. Code Ann. § 9-13-109(b) (Repl. 2020) (providing that the court may order drug testing in proceedings concerning child

custody, visitation, or the welfare of a child). "When the best interests of the child are at stake, the circuit court should look into the particular circumstances of each case and act as the welfare of the child appears to require." *Wilson v. Wilson*, 2016 Ark. App. 191, at 9, 487 S.W.3d 420, 426.

Here, the evidence supported the circuit court's determination that Reagan's marijuana usage in conjunction with her other medications needed to be medically reviewed, monitored, and recommended by her physician for her conditions were she to retain primary physical custody of MC1 and MC2. The children's best interest and well-being are served by their mother's being healthy and using medication as recommended and monitored by her physician. The circuit court's ordering Reagan to obtain the proper medical care and guidance in her use of medical marijuana in conjunction with other medications is a means to that end. We do not find that the circuit court clearly erred in ordering Reagan to provide a report from her primary-care physician after consulting with him or her in person regarding her medications.

## IV. The Constitutionality of the Requirement that Reagan Provide Her Medical Marijuana Receipts to John

Appellant argues that requiring her to provide her marijuana-related receipts to her ex-husband, John, violates her right to privacy as protected by article 2, section 2 of the Arkansas Constitution. We disagree.

Article 2, section 2 of the Arkansas Constitution provides:

All men are created equally free and independent, and have certain inherent and inalienable rights; amongst which are those of enjoying and defending life

11

and liberty; of acquiring, possessing and protecting property, and reputation; and of pursuing their own happiness. To secure these rights governments are instituted among men, deriving their just powers from the consent of the governed.

The Arkansas supreme court has found that a fundamental right to privacy is implicit in this provision. *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002) (striking down sodomy statute on the basis that it infringes on the right to privacy and the equal-protection guarantees of our state constitution). However, even the fundamental right to privacy is secondary to the child's best interest in child-custody and visitation cases as well as dependency-neglect cases. *See Ark. Dep't of Hum. Servs. v. Cole*, 2011 Ark. 145, 380 S.W.3d 429. In *Cole*, the Arkansas Supreme Court struck down as unconstitutional the Arkansas Adoption and Foster Care Act of 2008 while recognizing that in child-custody, visitation, and dependency-neglect cases, courts retain the right to determine the best interest of the child on a case-by-case basis. In doing so, the court explained that it previously had recognized the primary consideration in child-custody cases as the best interest of the child and "that *all* other considerations are secondary." *Id*. at 16, 380 S.W.3d at 438 (emphasis added).

In the present case, the circuit court had reason to be concerned about Reagan's marijuana use based on the evidence before it. And the circuit court was charged with protecting the well-being and best interest of MC1 and MC2. The circuit court considered all the circumstances of the case and carefully crafted an order to meet the needs of the children, all other interests being secondary to this paramount consideration. Rather than

removing the children from Reagan's custody, the court put rules in place to monitor the course of Reagan's marijuana usage as it pertains to her ability to care for the parties' children. It was neither overreaching nor unconstitutionally invasive under these facts for the court to order Reagan to provide her marijuana-related receipts to John. Doing so places another safeguard on Reagan's marijuana usage while she serves as the children's primary custodian. It also serves to inform and reassure the children's father that Reagan is acting on medical recommendations in her marijuana usage and is able to safely care for their children. We affirm.

Affirmed.

KLAPPENBACH, C.J., and HIXSON, J., agree.

*Lion Legal*, by: *Kathryn Loyd Wilson*, for appellant.

*Jones Law Firm*, by: *F. Parker Jones III*, for appellee.