Cite as 2026 Ark. App. 283

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-25-321

| | |
|---|---|
| ZACHERY ALEXANDER RUSHTON<br>APPELLANT<br><br>V.<br><br>AILEEN SOMCHINE RUSHTON<br>APPELLEE | Opinion Delivered May 6, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FDR-23-51]<br><br>HONORABLE SHANNON L. BLATT, JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

Zachery Rushton appeals the Sebastian County Circuit Court's order denying his petition to change custody of the two minor children he shares with Aileen Rushton. Zachery argues that the circuit court committed reversible error by failing to find a material change in circumstances since the date of the divorce decree. We affirm.

The parties married on January 26, 2020, and were divorced by decree dated February 28, 2023. The parties were awarded joint custody of their two minor children and were to exchange the children each Sunday. On May 24, 2024, Zachery filed a motion to modify the decree requesting that he receive sole custody, that the court set visitation for Aileen, and that Aileen be ordered to pay him child support. In the motion to modify, Zachery alleged that there had been a material change in circumstances since the decree was entered and

pled the following specifically: (1) Aileen is unstable and had multiple romantic partners in her home, including her husband "Britt Ozeroglu," a known drug user who has supervised visitation with one of his minor children; (2) Aileen has a history of excessive alcohol abuse and has been arrested at least twice for DUI; (3) Aileen is consistently late in dropping off the children at school and often fails to take them to their extracurricular activities; and (4) Aileen resigned from her job due to accusations of embezzlement. On June 23, Aileen filed an answer and counterclaim to Zachery's petition denying all allegations and seeking a modification of child support.

On August 9, Zachery filed a motion for immediate custody alleging that Aileen is habitually drunk in the presence of the children. He also alleged she had concealed an arrest and the disposition of charges against her. Zachery pled that the children were in imminent danger of physical harm unless the court intervened and requested that the court order her to undergo "extended alcohol testing."

On that same date, Zachery filed a motion asking to remove the minor children from the state and that he be allowed to relocate the children to Oklahoma—where he resided—for school purposes.

Aileen filed responses to both petitions and also requested an expedited hearing to refute the allegations that the children were in imminent danger of physical harm. She attached the results of an alcohol assessment she agreed to undergo following an incident between her and Britt that led to her arrest. She denied that Zachery should be allowed to relocate the children and enroll them in a school in Oklahoma.

In response, Zachery filed a motion for alcohol testing. The court entered an order on August 16 directing that within twenty-four hours, Aileen was to report to Applicant Information for an alcohol hair-follicle drug test that would test for alcohol use during the past ninety days. Aileen submitted to the testing, and the results were filed with the court on August 26. Aileen tested "[p]ositive: low to moderate consumption" of alcohol.

Aileen and Zachery entered an agreed order on October 2 canceling the temporary hearing on Zachery's motions to remove the children from the state and for immediate custody. The case was set for a full-day final hearing on January 16, 2025.

At the final hearing, six witnesses testified. Officer Justin Ritter with the Fort Smith Police Department testified that he responded to a domestic disturbance on June 21, 2024, around 11:30 p.m. and found Britt outside the home in his boxers, and he saw a giant mark that looked like a coat hanger across his back and a mark on his shoulder. After speaking with Britt, Officer Ritter found Aileen inside. Aileen told Officer Ritter that "it's complicated." Officer Ritter testified that Aileen's speech was slurred, she smelled of intoxicants, and she had an altered gait. He took her into custody and charged her with felony domestic aggravated assault. Officer Ritter said Aileen ultimately pled guilty to misdemeanor domestic battery. On cross-examination, Officer Ritter admitted that Aileen was compliant and that no children were present during the incident.

Aileen testified that she had lived at her current home since October 2023. Since the divorce, she and the children had lived in three different residences, but all were in the same

school district. She stated that while she had moved a few times since her divorce from Zachery, she made sure things stayed consistent for the children.

She and Britt started living together after her divorce from Zachery. They broke up in August 2023, and she began dating a co-worker, Chico Gonzales, in October. Aileen stated she never introduced her children to Chico as a romantic partner, and he never spent the night. She ended her relationship with Chico in December 2023. She and Britt got back together, and they married in February 2024.

Aileen testified that Britt physically abused her but never in front of her children. There was one incident in March 2023 in which Britt took her phone and watch. She denied there was a physical altercation between them, but she admitted she had been drinking that night.

Aileen admitted drinking alcohol two or three times a week. She denied DUI convictions since her divorce. Aileen drove with the children in the car after having a beer with dinner and recalled doing so one time in September 2023. Aileen testified that she had been drinking when the June 21, 2024, incident occurred with Britt, which led to her arrest. Aileen and Britt separated after this incident, and she filed for annulment the day before the final hearing. She agreed that she would never again have her children around Britt.

Aileen testified that Zachery moved to Oklahoma but remained employed with the Fort Smith Fire Department, where he works twenty-four-hour shifts and is off forty-eight hours. From the date of her divorce from Zachery until the summer of 2024, the children spent weekdays with her and weekends with Zachery during the school year. After he filed

4

the motion to modify custody, the custodial time returned to the week-on, week-off schedule. Aileen testified that Zachery's wife, Marriah, has two children from a prior marriage who attend school in Oklahoma. In the summer of 2024, Zachery contacted Aileen requesting to enroll the children in the Howe School District in Oklahoma. Over her objection, he enrolled the children in Howe Elementary School. Aileen and Zachery came to an agreement to keep the children at Cook Elementary School in Fort Smith until the final hearing. She testified that they were doing "amazing" in school and both had received all "S" marks for satisfactory.

Aileen testified that Marriah and Zachery enrolled the children in extracurricular activities in Poteau, Oklahoma, and he refused to allow Aileen to enroll them in any activities in Fort Smith. Aileen would take the children to their activities when she was exercising her custodial time. She admitted occasionally being late getting the children to activities, and on one occasion, one of the children missed a wrestling event because she misunderstood the start time.

When questioned about her employment, Aileen stated she worked at Choctaw Casino from 2020 until 2023. She conceded that she quit when she was under investigation for receiving a tip outside the tip pool. At the time of the hearing, she was employed at Harry Robinson Dealership, which provided better hours and allowed her to spend more time with the children. Aileen summed up her testimony by stating that coparenting was going well with Zachery, but it was "not easy" with Marriah.

Zachery testified that he and Marriah moved into a house in Wister, Oklahoma, after his divorce from Aileen. He filed the motion to modify after considering "the drinking issues she's had, with the boyfriends and the – and the houses, moving from house to house." He testified that Aileen had moved three times since the divorce. He was concerned about Britt's drug use and the fact that he had only supervised visitation with his child. He also testified about Aileen's dating Britt, Chico, then Britt again. Zachery stated that Aileen did not tell him she had been arrested; he found the information online.

As to Aileen's alcohol use, Zachery stated that one time she sent him a picture of a tall beer about two hours before she was due to pick the children up from school. Other than that incident, he had no other evidence that she drank while she had the children, and he has never smelled alcohol on her when she picked the children up from him.

Zachery stated that Aileen did not object to the children being enrolled in extracurricular activities in Oklahoma. He had given her their schedules, and Aileen was able to attend their activities. He stated that he filled out the paperwork and talked to the administrators to enroll the children in the Howe School District to secure their spots, but he did not remove the children from Cook Elementary School. He told Aileen that he had purchased their school supplies and clothes for Howe Elementary. On cross-examination, Zachary admitted that while in Aileen's custody, the children were late arriving at school on only two occasions in the 2023–2024 school year and had not been late once in the 2024–2025 school year. He requested that the court change custody due to Aileen's domestic violence and alcohol usage.

6

With respect to the children, Marriah testified, "They've just had men in their life. They've had multiple homes. They just aren't as open to people as my own children and myself." She further explained that the children "are more shy. They're more, like, to themselves." Marriah admitted she had prepared a document for Aileen to sign changing custody to Zachery. She admitted taking photos and videos of Aileen and Britt at Lost Beach Bar and sending those to Aileen. Marriah also admitted that she had probably sent abusive text messages to Aileen and had said nasty things about her and her family history. Aileen's contact in Marriah's phone showed a picture of a trash can, which possibly the children had seen.

Sarralina Azis testified that she worked with Aileen at Harry Robinson. Aileen was a "team player, company girl, comes and works hard and is always there," who had never violated any company policies or procedures and had never showed up to work hung over.

At the close of the hearing the court made an oral ruling:

[T]he [c]ourt finds that there is not sufficient evidence to find a material change in circumstance with the mother.

Neither party shall drink to the point of intoxication in the presence of the minor children. Neither party shall transport the minor children under the influence of any alcohol. That means one sip of alcohol.

The parents need to be the ones to communicate regarding the children, not the stepparents.

Britt, and y'all say this name a whole lot better than I do, Ozeroglu is not to be around the minor children.

The defendant/mother is going to be even if the parties cannot agree on educational or medical, the mother is going to be the final decision maker.

With regard to extracurricular activities, neither party shall enroll the minor children in activities that interfere with the other party's time, absent an agreement, but if you-all agree to enroll the minor children in extracurricular activities, you need to make sure they get there, and if one of you can't get the children there, have another responsible adult get the children there. Both parties may allow responsible adults to assist in the transport of the minor children.

One of the biggest changes that the [c]ourt sees in this case is that the plaintiff/father relocated to Oklahoma, and it would be a whole lot more convenient for him to have the kids with him, but -- and the mother's made a couple of poor decisions herself. I can't overlook that, but I don't think they rise to the point of a material change in circumstance.

I think the stepmother has overstepped her boundaries and needs to step back, and I think everyone in the room has acknowledged that, and she needs to let the parents co-parent these children.

On February 12, 2025, the court entered its written order denying Zachery's request for a change of custody, finding that there was not a material change of circumstances. This appeal followed.

This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999). We recognize and give special deference to the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham v. Cunningham*, 2019 Ark. App. 416, at 4, 588 S.W.3d 38, 40.

Modification of custody is a two-step process: first, the circuit court must determine whether a material change in circumstances has occurred since the last custody order; and second, if the court finds that there has been a material change in circumstances, it must determine whether a change of custody is in the child's best interest. *Shell v. Twitty*, 2020 Ark. App. 459, at 4, 608 S.W.3d 926, 929–30. The party seeking the modification of the custody order has the burden of showing a material change in circumstances. *Bonds v. Bonds*, 2021 Ark. App. 359, 634 S.W.3d 572. Courts impose more stringent standards for modifications in custody than they do for initial determinations of custody to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Stormes v. Gleghorn*, 2022 Ark. App. 416, 653 S.W.3d 820. The best interest of the children is the polestar in every child-custody case; all other considerations are secondary. *Skinner v. Shaw*, 2020 Ark. App. 407, at 11–12, 609 S.W.3d 454, 461. Moreover, the crux of these cases is that a child-custody determination is fact specific, and each case ultimately must rest on its own facts. *Self v. Dittmer*, 2021 Ark. App. 85, at 9, 619 S.W.3d 43, 48.

We look at whether there has been a material change in circumstances since issuance of the last order of custody—here, the divorce decree. *Szwedo v. Cyrus*, 2020 Ark. App. 319, at 9, 602 S.W.3d 759, 766. Thus, we look at whether there has been a material change in circumstances since February 28, 2023. At the hearing, the circuit court considered all of Zachery's allegations that he claimed supported a material change of circumstances: Aileen's alleged instability, including her conviction of misdemeanor domestic battery; alcohol consumption; alleged involvement with multiple men; and three moves.

On appeal, Zachery argues that the circuit court's finding of no material change of circumstances was clearly erroneous because there were "undisputed facts, in the aggregate" that Aileen "demonstrated a pattern of repeated poor conduct evincing bad judgment concerning alcohol and the minor children's well-being."

It is undisputed that Aileen was arrested and pled guilty to a misdemeanor domestic battery on June 21, 2024, following an incident with her husband, Britt. The court must "consider the effect of domestic violence" on a family member "upon the best interests of the child, whether or not the child was physically injured or personally witnessed the abuse." Ark. Code Ann. § 9-13-101(c)(1) (Supp. 2025). Aileen testified that this altercation occurred on a night when she did not have the children, and therefore, the children did not personally witness the incident, nor were they physically injured. Aileen testified that she and Britt separated after the incident and that she filed for an annulment the day before the hearing. By all accounts, the children have not seen, or been around, Britt since the incident occurred. In its written order, the court further ordered that the children were to have no contact with Britt. While the court did not make specific findings about the domestic-violence charge against Aileen, this court, under its de novo review, may nonetheless conclude there was sufficient evidence that the court made the necessary determination. *See Hewett v. Hewett*, 2018 Ark. App. 235, 547 S.W.3d 138. We find there was sufficient evidence that the one domestic-violence incident had no effect on the best interest of the children and did not trigger a material-change-of-circumstances finding.

While Aileen admitted she had been drinking the night of the incident, she asked the prosecutor to order an alcohol assessment. She was fully compliant and required no intervention. When the circuit court ordered her to undergo a hair-follicle test following Zachery's motion for immediate custody, Aileen was compliant with that test as well. The results showed "positive: low to moderate" alcohol use. There was no testimony or proof at the final hearing of what the hair-follicle results meant—such as how much she consumed to reach that level. After the hair-follicle test results were filed with the court, Zachery and Aileen entered into an agreed order to cancel the temporary hearing. It defies logic to claim that Zachery is concerned about Aileen's alcohol use while simultaneously canceling the temporary hearing for immediate custody and allowing her to continue driving the children.

On appeal, Zachery posits that Aileen abuses alcohol. He argued that she drank beer before picking up the children one time because she sent him a Snapchat picture of a tall glass of beer two hours earlier. There was no proof as to when that picture was taken or whether she had consumed the beer. While Aileen admitted that there were a few times when she had driven the children after having a beer at dinner, the court addressed this issue in its order by stating that "neither party shall transport the minor children under the influence of any alcohol. That means one sip of alcohol." The circuit court may enter an order to reduce areas of conflict in a manner determined appropriate by the court. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv); *see also Judkins v. Judkins*, 2025 Ark. App. 524. Even Zachery admitted he had no evidence that Aileen consumed alcohol in the presence of the children and that he had never smelled alcohol on her during exchanges of the children.

11

Further, the record contains neither evidence nor findings that Aileen's drinking was different at the time of the hearing from that at the time of the divorce decree. Thus, Zachery did not meet his burden of proof to show that there had been a material change of circumstances in Aileen's alcohol use. *See Geren Williams v. Geren*, 2015 Ark. App. 197, 458 S.W.3d 759.

Zachery also argues that Aileen exposed the children to multiple romantic partners. The evidence does not support this argument. Aileen testified that she and Britt were in a relationship when she and Zachery divorced. She ended her relationship with Britt in August 2023 and began seeing Chico—her co-worker—from October to December 2023. Aileen never introduced Chico to the children as her boyfriend, and there was no evidence he had stayed overnight when the children were present. After Aileen ended things with Chico, she and Britt began dating again and married in February 2024.

The only evidence in the record of "multiple romantic partners" was that Aileen had dated two men since the divorce—one whom she married and the other whom the children understood to be a friend. Zachery's argument is without merit that dating two men exposes the children to multiple romantic partners sufficient to warrant a material change in circumstances.

Zachery argues that the facts in this case are similar to the facts in *Inmon v. Heinley*, 94 Ark. App. 40, 224 S.W.3d 572 (2006), in which this court drew a distinction between isolated incidents of indiscretion and "moral breakdown leading to depravity which renders one unfit to have custody of a minor." *Id.* at 44, 224 S.W.3d at 574. Heinley had been arrested

for hot-check charges, driving on a suspended driver's license, and failing to pay fines. In finding a material change of circumstances, we stated:

> This evidence of repeated lawbreaking, together with the confrontational and disrespectful character of several remarks made by appellee as he testified at trial, leads us reluctantly to the conclusion that [Heinley] has lost the willingness and ability to act as a proper role model for his seven-year old son, and to teach him the need to afford due respect to the law and to others.

*Id.* at 43, 224 S.W.3d at 574. This case is clearly distinguishable from *Inmon*, in which the appellee had multiple arrests for which he showed no regret. In this case, the circuit court expressed concern that at times Aileen exercised poor judgment but that it did not rise to the level of a material change in circumstances. The court considered Aileen's behavior, heard the testimony from the parties and witnesses, and weighed the evidence. The children were doing "amazing" and received satisfactory reports from their school. The court placed safeguards in the order regarding Zachery's concerns and prohibited the consumption of alcohol while the children were in their care and prohibited Britt from having any contact with the children.

We will not substitute our judgment for that of the circuit court, which observed the witnesses firsthand. *See Reynolds*, 2024 Ark. App. 229, 687 S.W.3d 584. We conclude that the court did not err in finding there was no material change in circumstances.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Aundrea Stone Hanna, PLLC*, by: *T.J. Fosko*, for appellant.

*Mock Legal Solutions, PLC*, by: *Jacqueline Mock*, for appellee.